1  Kent A. Gardiner (pro hac vice)
   Kathryn D. Kirmayer (pro hac vice)
2  Jerome A. Murphy (pro hac vice)
   CROWELL & MORING LLP
3  1001 Pennsylvania Avenue, N.W.
   Washington, D.C.  20004
4  Telephone:  202-624-2500
   Facsimile:  202-628-5116
5  E-mail:  kgardiner@crowell.com
            kkirmayer@crowell.com
6           jmurphy@crowell.com

7  Daniel A. Sasse (CA Bar No. 236234)
   Christine E. Cwiertny (CA Bar No. 222098)
8  CROWELL & MORING LLP
   3 Park Plaza, 20th Floor
9  Irvine, California  92614
   Telephone:  949-263-8400
10 Facsimile:  949-263-8414
   E-mail:  dsasse@crowell.com
11          ccwiertny@crowell.com

12 Paul P. Eyre  (pro hac vice)
   Melissa Maxman (pro hac vice)
13 Tracy Cole (pro hac vice)
   BAKER & HOSTETLER LLP
14 666 Fifth Avenue
   New York, NY 10103
15 Telephone: 212-589-4200
   Facsimile: 212-589-4201
16 E-mail: peyre@bakerlaw.com
            mmaxman@bakerlaw.com
17          tcole@bakerlaw.com

18 Counsel for Plaintiff
   Jaco Electronics, Inc.
19

Filed

FEB 2 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-FILING

ADR

#10
Fees Pd
SJ

C07  01212

BY FAX

HRL

20            UNITED STATES DISTRICT COURT

21      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

22  JACO ELECTRONICS, INC., a New York          Case No.
    corporation,
23                                              **COMPLAINT FOR DAMAGES AND
                 Plaintiff,                     INJUNCTIVE RELIEF**
24
         v.                                     **(1)    VIOLATION OF THE
25                                                      SHERMAN ACT PURSUANT
    HYNIX SEMICONDUCTOR, INC., a                        TO 15 U.S.C. § 1**
26  Korean corporation, HYNIX
    SEMICONDUCTOR AMERICA, INC., a
27  California corporation, MOSEL VITELIC
    INC., a Taiwanese corporation, MOSEL
28  VITELIC CORPORATION, a California

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  corporation, NANYA TECHNOLOGY
   CORPORATION, a Taiwanese corporation,
2  NANYA TECHNOLOGY CORPORATION,
   USA, a California corporation, WINBOND
3  ELECTRONICS CORPORATION, a
   Taiwanese corporation, WINBOND
4  ELECTRONICS CORPORATION
   AMERICA, a Delaware corporation, ELPIDA
5  MEMORY, INC., a Japanese corporation,
   ELPIDA MEMORY (USA) INC., a
6  Delaware corporation, MITSUBISHI
   ELECTRIC CORPORATION, a Japanese
7  corporation, MITSUBISHI ELECTRIC AND
   ELECTRONICS USA, INC., a Delaware
8  corporation, INFINEON TECHNOLOGIES
   AG, a German corporation, INFINEON
9  TECHNOLOGIES NORTH AMERICA
   CORPORATION, a Delaware corporation,
10 MICRON TECHNOLOGY, INC., a Delaware
   corporation, MICRON SEMICONDUCTOR
11 PRODUCTS, INC., an Idaho corporation,
   NEC ELECTRONICS CORPORATION, a
12 Japanese corporation, NEC ELECTRONICS
   AMERICA, INC., a California corporation,
13 and DOES 1through 5,

14                    Defendants.

15

(2)    **VIOLATION OF
       CALIFORNIA'S
       CARTWRIGHT ACT
       PURSUANT TO §§ 16700
       ET SEQ. CAL. BUS. & PROF.
       CODE**

(3)    **VIOLATION OF
       CALIFORNIA'S UNFAIR
       COMPETITION ACT
       PURSUANT TO §§ 17200 ET
       SEQ. OF CAL. BUS. & PROF.
       CODE**

**DEMAND FOR JURY TRIAL**

16        Plaintiff Jaco Electronics, Inc., for its Complaint against defendants Hynix

17 Semiconductor, Inc.; Hynix Semiconductor America, Inc.; Mosel Vitelic Inc.; Mosel

18 Vitelic Corporation; Nanya Technology Corporation; Nanya Technology Corporation

19 (USA); Winbond Electronics Corporation; Winbond Electronics Corporation America;

20 Elpida Memory, Inc.; Elpida Memory (USA), Inc.; Mitsubishi Electric Corporation;

21 Mitsubishi Electric and Electronics USA, Inc.; Infineon Technologies AG; Infineon

22 Technologies North America Corporation; Micron Technology, Inc.; Micron

23 Semiconductor Products, Inc.; NEC Electronics Corporation; NEC Electronics America,

24 Inc. and Doe defendants 1 through 5, alleges, on personal knowledge or information and

25 belief, as follows:

26 **A.    Nature of Action**

27        1.    Plaintiff Jaco Electronics, Inc. ("Jaco" or "Plaintiff") brings this action to

28 recover damages it has incurred as a result of long-standing collusion by suppliers of

---

1

*crowell moring*
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  dynamic random access memory ("DRAM") computer chips. As described in more

2  detail below, in June 2002 the United States Department of Justice announced that it had

3  begun to investigate a conspiracy among the world's DRAM suppliers. During the

4  conspiracy, DRAM suppliers conspired to control production capacity, raise prices or

5  slow their decline, allocate customers, and otherwise unlawfully overcharge their DRAM

6  customers. During that same period of time, Jaco purchased several million dollars of

7  DRAM chips from the conspirators.

8       2.      As a result of the Department of Justice's investigation, five of the world's

9  largest suppliers of DRAM chips have now admitted their involvement in the conspiracy,

10  including Hynix Semiconductor, Inc., Infineon Technologies AG, Elpida Memory, Inc.,

11  and Micron Technology, Inc. Micron Technology, Inc. obtained amnesty from criminal

12  prosecution by being the first to admit its participation in the illegal cartel; Infineon

13  Technologies AG, Hynix Semiconductor, Inc., and Elpida Memory, Inc. have agreed to

14  enter guilty pleas and pay fines based on their involvement in the illegal activities.

15  Furthermore, senior officials of Micron Technology, Inc., Hynix Semiconductor, Inc.,

16  and Infineon Technologies AG, among others, have pleaded guilty to colluding with their

17  competitors to fix and raise DRAM prices. The Department of Justice investigation is

18  continuing, and additional guilty pleas from other conspirators are expected.

19       3.      Jaco seeks treble damages and injunctive relief to remedy injuries it has

20  sustained as a result of the defendants' illegal activities.

21  **B.      Jurisdiction and Venue**

22       4.      Jaco brings this action pursuant to Sections 4, 12, and 16 of the Clayton Act

23  (15 U.S.C. § § 15, 22, and 26) (2000 suppl. 2) for treble damages and injunctive relief, as

24  well as reasonable attorneys' fees and costs, with respect to the injuries it has sustained

25  arising from violations by the defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1

26  (2000 suppl. 2).

27       5.      Jaco also brings this action pursuant to Section 16750(a) of the California

28  Business and Professions Code, for injunctive relief and treble damages that Jaco

1   sustained due to violations by the defendants and their co-conspirators of Section 16700

2   *et seq.* of the California Business and Professions Code (the "Cartwright Act"). Jaco's

3   claims are also brought pursuant to Sections 17203 and 17204 of the California Business

4   and Professions Code, to obtain restitution from and an injunction against the defendants

5   due to their violations of Section 17200 *et seq.* of the California Business and Professions

6   Code (the "Unfair Competition Act").

7         6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1331

8   and 1337(a). This Court has supplemental jurisdiction over Jaco's state law claims

9   pursuant to 28 U.S.C. § 1367 because those claims are related to the federal claims such

10   that they form part of the same case or controversy.

11         7.    This Court has jurisdiction over this action pursuant to the Foreign Trade

12   Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that Jaco's injuries were

13   proximately caused by increased prices for DRAM in the United States.

14         8.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22,

15   and 28 U.S.C. § 1391(b), (c), and (d), in that at least one of the defendants resides in this

16   judicial district or is licensed to do business or is doing business in this judicial district.

17   Venue as to each defendant also is proper in this judicial district pursuant to the

18   provisions of Sections 16750(a) and 17203 of the California Business and Professions

19   Code. The unlawful conduct undertaken pursuant to the combination and conspiracy

20   alleged herein had and has a direct effect on business within the State of California, and

21   the trade and commerce described below is carried on to a significant degree within the

22   State of California.

23         9.    This Court has in personam jurisdiction over each of the defendants

24   because, inter alia, each defendant (a) transacted business throughout the United States,

25   including this district; (b) manufactured, sold, shipped, and delivered substantial

26   quantities of DRAM throughout the United States, including this district; (c) had

27   substantial contacts with the United States; and (d) was engaged in an illegal scheme and

28   price-fixing conspiracy that was directed at and had the intended effect of causing injury

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1 | to persons and entities residing in, located in, or doing business throughout the United

2 | States.

3 | **C.  Intradistrict Assignment**

4 | 10. Because a large number of the defendants maintain their principal places of

5 | business within Santa Clara County, this action arises in Santa Clara County for the

6 | purposes of Civil L.R. 3-2(c), and should be assigned to the San Jose Division.

7 | Concurrent with or shortly after the filing of its Complaint, however, Jaco will file an

8 | Administrative Motion to Consider Whether Cases Should Be Related in the *In re DRAM*

9 | *Antitrust Litigation*, MDL 02-1486 PJH in the United States District Court for the

10 | Northern District of California, San Francisco Division.

11 | **D.  Parties**

12 | 11. Jaco is a New York corporation with its principal place of business in

13 | Hauppauge, New York. Jaco is a world-wide distributor of electronic components and

14 | display products, which are used in the manufacture and assembly of electronic products,

15 | with net sales in fiscal year 2006 of $228.5 million. During the relevant timeframe, Jaco

16 | was a direct purchaser of DRAM from one or more of the defendants. As a direct

17 | purchaser, Jaco frequently negotiated with one or more of the defendants the price of

18 | DRAM and memory modules primarily comprised of DRAM. Furthermore, Jaco made

19 | all purchasing decisions regarding DRAM in its U.S. offices. Defendants' and their co-

20 | conspirators' price-fixing was the proximate cause of artificially-elevated prices actually

21 | paid by Jaco for DRAM delivered both throughout the United States and the world.

22 | During the relevant timeframe, Jaco also negotiated DRAM prices with defendants on

23 | behalf of Jaco's customers. To the extent Jaco was an indirect purchaser of DRAM, the

24 | price of that DRAM was artificially inflated, causing Jaco to pay a higher price.

25 | 12. Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains its

26 | head offices at San 136-1, Ami-Ri, Bubal-eub, Ichon-si, Kyoungki-do, Korea 467-701.

27 | During the time covered in this complaint, Hynix Semiconductor, Inc., a manufacturer of

28 | DRAM, sold and distributed DRAM throughout the world, including the United States.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  On information and belief, as a Korea-based manufacturer of DRAM with facilities

2  throughout the world, Hynix Semiconductor, Inc. manipulated the price of DRAM

3  charged around the globe, including in the United States, by intentionally restricting the

4  production capacity of its manufacturing plants located in Asia and directing its

5  international affiliates, including those located in the United States, to charge collusively-

6  established prices for DRAM.  As a result of Hynix Semiconductor, Inc.'s illegal

7  activities directed at the United States and elsewhere, Jaco paid artificially-inflated prices

8  for DRAM.

9        13.    Defendant Hynix Semiconductor America, Inc. is a California corporation

10  located at 3101 North First Street, San Jose, California 95134.  Hynix Semiconductor

11  America, Inc., on information and belief, is a wholly-owned and controlled subsidiary of

12  defendant Hynix Semiconductor, Inc. (collectively referred to as "Hynix").  During the

13  time period covered in this complaint, Hynix Semiconductor America, Inc. sold and

14  distributed DRAM throughout the United States.

15        14.    Defendant Mosel Vitelic Inc. is a Taiwanese corporation which maintains

16  its headquarters at No. 1 Creation Rd. 1, Hsinchu Science Park, Hsinchu, Taiwan, 30077

17  R.O.C.  During the time period covered in this complaint, Mosel Vitelic Inc., a

18  manufacturer of DRAM, sold and distributed DRAM throughout the world, including the

19  United States.  On information and belief, as a Taiwan-based manufacturer of DRAM

20  with facilities throughout the world, Mosel Vitelic Inc. manipulated the price of DRAM

21  charged around the globe, including in the United States, by intentionally restricting the

22  production capacity of its manufacturing plants located in Asia and directing its

23  international affiliates, including those located in the United States, to charge collusively-

24  established prices for DRAM.  As a result of Mosel Vitelic Inc.'s illegal activities

25  directed at the United States and elsewhere, Jaco paid artificially-inflated prices for

26  DRAM.

27        15.    Defendant Mosel Vitelic Corporation is a California corporation located at

28  3910 North First Street, San Jose, California 95314.  Mosel Vitelic Corporation, on

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

5

1  information and belief, is a wholly-owned and controlled subsidiary of defendant Mosel

2  Vitelic Inc. (collectively referred to as "Mosel Vitelic"). During the time period covered

3  in this complaint, Mosel Vitelic Corporation sold and distributed DRAM throughout the

4  United States.

5       16.    Defendant Nanya Technology Corporation is a Taiwanese corporation

6  which maintains its headquarters at Hwa Ya Technology Park, 669 Fu Hsing 3rd Rd.

7  Keuishan, Taoyuan, Taiwan, 333. During the time period covered in this complaint,

8  Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM

9  throughout the world, including the United States. On information and belief, as a

10  Taiwan-based manufacturer of DRAM with facilities throughout the world, Nanya

11  Technology Corporation manipulated the price of DRAM charged around the globe,

12  including in the United States, by intentionally restricting the production capacity of its

13  manufacturing plants located in Asia and directing its international affiliates, including

14  those located in the United States, to charge collusively-established prices for DRAM.

15  As a result of Nanya Technology Corporation's illegal activities directed at the United

16  States and elsewhere, Jaco paid artificially-inflated prices for DRAM.

17       17.    Defendant Nanya Technology Corporation, USA, a California corporation,

18  is located at 675 E. Brokaw Road, San Jose, California 95112. On information and

19  belief, Nanya Technology Corporation USA is a wholly-owned and controlled subsidiary

20  of defendant Nanya Technology Corporation (collectively referred to as "Nanya"). In

21  addition to its main U.S. office in San Jose, Nanya Technology Corporation operates

22  sales and technical support offices in San Jose, California, Raleigh, North Carolina, and

23  Austin, Texas and operates a memory design center in Houston, Texas. During the time

24  period covered in this complaint, Nanya Technology Corporation USA sold and

25  distributed DRAM throughout the United States.

26       18.    Defendant Winbond Electronics Corporation is a Taiwanese corporation

27  headquartered at No. 4, Creation Road 3 and No. 9, Li-Shin Road, Science-Based

28  Industrial Park, Hsinchu, Taiwan, 300, R.O.C. During the time period covered in this

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  complaint, Winbond Electronics Corporation, a manufacturer of DRAM, sold and

2  distributed DRAM throughout the world, including the United States.  On information

3  and belief, as a Taiwan-based manufacturer of DRAM with facilities throughout the

4  world, Winbond Electronics Corporation manipulated the price of DRAM charged

5  around the globe, including in the United States, by intentionally restricting the

6  production capacity of its manufacturing plants located in Asia and directing its

7  international affiliates, including those located in the United States, to charge collusively-

8  established prices for DRAM.  As a result of Winbond Electronics Corporation's illegal

9  activities directed at the United States and elsewhere, Jaco paid artificially-inflated prices

10  for DRAM.

11       19.     Defendant Winbond Electronics Corporation America, a Delaware

12  corporation, is located at 2727 North First Street, San Jose, California 95134 and is a

13  wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as

14  "Winbond").  During the time period covered in this complaint, Winbond Electronics

15  Corporation America sold and distributed DRAM throughout the United States.

16       20.     Defendant Elpida Memory, Inc., a Japanese corporation, maintains its

17  executive offices at Sumitomo Seimei Yaesu Building, 3F, 2-1 Yaesu 2-chome, Chuo-ku,

18  Tokyo, 104-0028, Japan.  During the time period covered in this complaint, Elpida

19  Memory, Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the

20  world, including the United States.  On information and belief, as a Japan-based

21  manufacturer of DRAM with facilities throughout the world, Elpida Memory, Inc.

22  manipulated the price of DRAM charged around the globe, including in the United

23  States, by intentionally restricting the production capacity of its manufacturing plants

24  located in Asia and directing its international affiliates, including those located in the

25  United States, to charge collusively-established prices for DRAM.  As a result of Elpida

26  Memory Inc.'s illegal activities directed at the United States and elsewhere, Jaco paid

27  artificially-inflated prices for DRAM.

28

COMPLAINT OF JACO ELECTRONICS, INC.

21.     Defendant Elpida Memory (USA) Inc., a Delaware corporation, is located at 2001 Walsh Ave, Santa Clara, California, 95050 and is a wholly-owned subsidiary of Elpida Memory, Inc. (collectively referred to as "Elpida").  During the time period covered in this complaint, Elpida Memory (USA) Inc. sold and distributed DRAM throughout the United States.

22.     Defendant Mitsubishi Electric Corporation, a Japanese corporation, is headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  During the time period covered in this complaint, Mitsubishi Electric Corporation, a manufacturer of DRAM,  sold and distributed DRAM throughout the world, including the United States.  On information and belief, as a Japan-based manufacturer of DRAM with facilities throughout the world, Mitsubishi Electric Corporation manipulated the price of DRAM charged around the globe, including in the United States, by intentionally restricting the production capacity of its manufacturing plants located in Asia and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM.  As a result of Mitsubishi Electric Corporation's illegal activities directed at the United States and elsewhere, Jaco paid artificially-inflated prices for DRAM.

23.     Defendant Mitsubishi Electric & Electronics USA, Inc., a Delaware corporation, is headquartered at 5665 Plaza Drive, Cypress, CA 90630-0003 and is a wholly-owned subsidiary of Mitsubishi Electric Corporation.  During the time period covered in this complaint, Mitsubishi Electric & Electronics USA, Inc. sold and distributed DRAM throughout the United States.

24.     Defendant Infineon Technologies AG, a German corporation, has its principal place of business at Am Campeon 1-12, Munich, 85579, Germany.  During the time period covered in this complaint, Infineon Technologies AG, a manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United States.  On information and belief, as a German-based manufacturer of DRAM with facilities throughout the world, Infineon Technologies AG manipulated the price of DRAM

COMPLAINT OF JACO ELECTRONICS, INC.

1   charged around the globe, including in the United States, by intentionally restricting the

2   production capacity of its manufacturing plants located throughout the world and

3   directing its international affiliates, including those located in the United States, to charge

4   collusively-established prices for DRAM.  As a result of Infineon Technologies AG's

5   illegal activities directed at the United States and elsewhere, Jaco paid artificially-inflated

6   prices for DRAM.

7          25.    Defendant Infineon Technologies North America Corporation, a Delaware

8   corporation and a wholly-owned subsidiary of Infineon Technologies AG (collectively

9   referred to as "Infineon"), has its principal place of business at 640 N. McCarthy

10  Boulevard, Milipitas, CA 95035.  During the time period covered in this complaint,

11  Infineon Technologies North America Corporation sold and distributed DRAM

12  throughout the United States. Recently, Infineon spun-off its DRAM business, which is

13  now operating as Qimonda, a wholly-owned subsidiary of Infineon Technologies AG.

14         26.    Defendant Micron Technology, Inc. is a Delaware corporation with its

15  principal place of business at 8000 South Federal Way, Boise, Idaho 83707.  During the

16  time period covered in this complaint, Micron Technology, Inc., a designer, developer,

17  and manufacturer of DRAM, sold and distributed DRAM throughout the world, including

18  the United States.

19         27.    Defendant Micron Semiconductor Products, Inc. is an Idaho corporation

20  located at 8000 South Federal Way, Boise, Idaho, 83707 and is a wholly-owned

21  subsidiary of defendant Micron Technology, Inc. (collectively referred to as "Micron").

22  During the time period covered in this complaint, Micron Semiconductor Products, Inc.

23  sold DRAM, including through its Crucial Technology retail sales division, to computer

24  manufacturers and other end users throughout the United States and Europe.

25         28.    Defendant NEC Electronics Corporation is a Japanese corporation with its

26  principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa

27  211-8668, Japan.  During the time period covered in this complaint, NEC Electronics

28  Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   world, including the United States. On information and belief, as a Japan-based

2   manufacturer of DRAM with facilities throughout the world, NEC Electronics

3   Corporation manipulated the price of DRAM charged around the globe, including in the

4   United States, by intentionally restricting the production capacity of its manufacturing

5   plants located in Asia and directing its international affiliates, including those located in

6   the United States, to charge collusively-established prices for DRAM.  As a result of

7   NEC Electronics Corporation's illegal activities directed at the United States and

8   elsewhere, Jaco paid artificially-inflated prices for DRAM.

9        29.   Defendant NEC Electronics America, Inc., a California corporation, is a

10   wholly-owned subsidiary of NEC Electronics Corporation (collectively referred to as

11   "NEC") with its principal place of business at 2880 Scott Boulevard, Santa Clara,

12   California 95050.  During the time period covered in this complaint, NEC Electronics

13   America, Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the

14   world, including the United States.

15        30.   Doe defendants 1 through 5 are persons whose identities are as yet

16   unknown to Jaco and who have participated in the violations of the federal and state

17   antitrust laws for which Jaco seeks relief, and have performed acts and made statements

18   in furtherance thereof.

19        31.   Various individuals, partnerships, corporations, and associations other than

20   the defendants named in this complaint (the "Co-conspirators"and jointly with the named

21   defendants, "Defendants") have participated in the violations of the federal and state

22   antitrust laws for which Jaco seeks relief, and have performed acts and made statements

23   in furtherance thereof.

24        32.   Whenever in this complaint reference is made to any act, deed, or

25   transaction of any corporation, the allegation means that the corporation engaged in the

26   act, deed, or transaction by or through its officers, directors, agents, employees, or

27   representatives while they were actively engaged in the management, direction, control,

28   or transaction of the corporation's business or affairs.

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring

3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

**E.      Trade and Commerce**

33.      During the relevant period, Defendants sold and shipped substantial quantities of DRAM in a continuous and uninterrupted flow of interstate and international commerce to customers located in countries and states other than the countries and states in which Defendants manufacture DRAM.

34.      The business activities of Defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate and international trade and commerce.  The global conspiracy, in which the Defendants participated, had a direct, substantial, and reasonably foreseeable effect on United States commerce.

35.      During the relevant period, Defendants made most of the DRAM sales in the global market.

**F.      Statement of Facts**

36.      Defendants manufacture, sell, and distribute memory chips throughout the world.  Memory chips store data in a wide variety of computing and electronic devices.  Memory chips are used in the manufacture of, and are critical to the functioning of, such devices as personal computers, workstations, servers, printers, fax machines, digital cameras and video recorders, video game equipment, personal digital assistants, and cellular and wireless telephones.

37.      DRAM is the dominant, most common form of memory chip.  "Random Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed directly from any part of the memory, rather than having to proceed sequentially from some starting place.  DRAM is called "dynamic" because it must have its storage cells refreshed or given a new electronic charge every few milliseconds.

38.      A DRAM chip is a large-scale integrated circuit with simple structures, and is fairly easy to manufacture.  Accordingly, DRAM is a commodity, with each of Defendants' products being freely interchangeable with the products of another company.

39.      DRAM is sold in individual chips, or in modules with several chips attached to each module.

11

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

40. DRAM sales exceed $20 billion a year. The world's top four makers of DRAM control roughly 70% of the market; the top six manufacturers control 96% of the market.

41. The DRAM industry enjoyed an extended period of prosperity in the mid-1990s as the PC computer industry boomed. During this time DRAM manufacturers could not meet the demand for their products. Revenues from DRAM sales nearly tripled between 1993 and 1995. DRAM manufacturers responded by building substantial new chip-making capacity. Factories for the manufacture of DRAM chips are referred to as fabrication plants, or "fabs."

42. In 1996, this new capacity, coupled with demand decline, led to pressure on Defendants to cut their prices. Defendants responded by illegally conspiring to limit capacity and artificially fix and raise prices.

43. Specifically, in December 1996, DRAM manufacturers attended a SyncLink Consortium. SyncLink was a DRAM industry organization whose members consisted of DRAM suppliers. During this December 1996 meeting, DRAM suppliers resolved to establish unified strategies to address market concerns. Although the organization initially appears to have been created to address technology concerns, the industry reorganized the consortium in January 1999, causing the new president of the organization to acknowledge publicly that the focus of the group would be to "co-ordinate instead of develop new technology."

44. Executives from DRAM suppliers met again in Japan in January 1997. During this meeting the participants agreed that they would need to continue communicating with each other. The participants also agreed to use an e-mail distribution software program then known as a reflector e-mail, which permitted industry executives to exchange information via e-mail quickly and confidentially.

45. Shortly after this meeting, in February 1997, DRAM suppliers curtailed production at their DRAM manufacturing facilities (known as "fabs"), as part of a collusive effort to maintain and raise prices.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

46.     This coordinated drop in production had an immediate, but temporary, effect on prices, which rose during the second quarter of 1997.  Prices then began to fall again in the second half of 1997.

47.     As DRAM prices continued to fall into early 1998, DRAM manufacturers held at least two meetings to discuss the problem in April and June.  The second meeting, held on June 25, was called an "Executive Summit" and was attended by industry executives.  One of the topics at the Summit was how to "Manage Price Competition, Profitability."  Upon information and belief, during these meetings, and in communications before and after these meetings, Defendants discussed supply and pricing issues, and agreed that they would limit their capacity to artificially decrease the supply of, and increase, maintain, or control the price of, DRAM chips.

48.     Between June and September of 1998 every major DRAM manufacturer announced that it was curtailing or shutting down DRAM production facilities because of a lack of demand for the product.  Hynix's corporate predecessor, Hyundai,[1] and another Co-conspirator each shut down their facilities for approximately one to two weeks in the summer of 1998.  Other suppliers communicated their intentions to slash production.

49.     This coordinated withdrawal of production capacity had an immediate effect on prices, which began to rise in June 1998, and increased steadily throughout the rest of the year.

50.     In August 1998, an email circulated among DRAM suppliers, which warned that during the ramp-up in production of a new DRAM standard being implemented by Rambus, DRAM vendors "will need a constant flow of information to help make wise decisions and to walk the fine line between a pleasant shortage and a disastrous over-supply."  A Hyundai executive noted that a shortage would please DRAM manufacturers because "prices go up."

---

[1]     The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics. In March 2001 Hyundai renamed this subsidiary Hynix Semiconductor.  In August 2001 Hyundai spun off the company.

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1        51.     A former employee of a Co-conspirator, has admitted that before he left his

2    former employer in July 1998, he spoke with competitors regarding price issues.  He

3    informed federal authorities that these conversations led to agreements on a "range pact"

4    that included "the ranges of prices, where each competitor felt that others would price in

5    the range, and whether each competitor would move prices 'a little' or 'a lot'."  Upon

6    information and belief, this evidence is corroborated by employee's own notes and other

7    documents.

8        52.     DRAM prices continued to climb steadily in 1999.  During this time,

9    Defendants continued their illegal communications with each other about prices, market

10   share, and supply.  In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi,

11   the vice president of marketing for Hyundai and head of the DRAM industry group

12   SLDRAM Inc. (the successor organization to SyncLink).  The e-mail states that "[w]ith

13   [one of the Co-conspirators] building significant amounts of product, we need to work

14   with them to limit the supply in the market, otherwise we both will be competing for

15   market share which will result in an oversupply.  We have to meet with [the Co-

16   conspirator] and discuss our and their production plan, TAM analysis and targeted market

17   share."  In response, another Hyundai employee stated that he had "a connection" with

18   the Co-conspirator and offered to set up a meeting.

19       53.     A short time later, Hyundai and another Co-conspirator based in Korea both

20   began raising prices at an accelerated rate.  Indeed, in September 1999, industry sources

21   noted that South Korea's DRAM suppliers were raising prices in one-to-two week

22   intervals.

23       54.     Despite their unlawful and secret cooperation to reduce DRAM production

24   and increase price, Defendants publicly misrepresented that DRAM prices escalated due

25   to increased demand resulting from strong sales of low-priced PCs incorporating large

26   quantities of DRAM.  In a September 13, 1999, Electronic News article a Co-

27   conspirator's vice president of marketing said: "Because we see the value PC and free

28   PCs entering the market at extraordinary numbers, DRAM oversupply has silently gone

14

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

into a shortage." Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG, agreed.

55. Because of Defendants' collusive activities, DRAM prices remained artificially inflated from the middle of 1998 through the fall of 2000.

56. In August 2000 prices began to drop once again. By mid-2001, every major DRAM manufacturer was reporting losses. Their stock prices fell. Once again the Defendants responded by conspiring with each other to control production and raise prices. Their collusive activities included, but were not limited to, the following:

- In July 2001, Hynix Semiconductor, Inc. announced plans to cut production to boost prices. A spokeswoman for Hynix stated: "We understand other companies are also considering cuts."

- In August 2001, an executive of Mosel-Vitelic admitted that Taiwan DRAM manufacturers had discussed curtailing production in an effort to raise prices.

- Also in August, Thomas Chang at Mosel Vitelic acknowledged talking to other Taiwan DRAM manufacturers about reducing supply. "Our preliminary agreement is to trim some production starting September."

- In November, Kathy Radford, a manager at Micron, acknowledged efforts of defendant Infineon and a Co-conspirator to raise prices of DRAM, and stated that Micron intended to raise prices for all of its OEM customers: "The consensus from all suppliers is that if Micron makes the move, all of them will do the same and make it stick."

- Alfred Censullo, a former Micron sales manager, also confirmed that defendant Micron spoke with competitors about pricing. Censullo pleaded guilty in January 2004 to federal charges of obstruction of justice, for altering and withholding documents responsive to a grand jury subpoena issued to Micron. At his sentencing hearing, Censullo acknowledged that these documents consisted of notes that he took

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

15

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1          during weekly conference calls with other regional sales managers at

2          Micron, who like Censullo were responsible for customers.  During

3          these calls the managers would discuss price recommendations for

4          customers and the prices at which competitors would sell their products

5          to these customers.  Censullo's notes reflected this pricing information

6          and identified communications between Micron and its competitors

7          about sales and pricing.

8      57.    These collusive activities perpetrated by Defendants worked: by the end of

9 2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot

10 price.

11      58.    Nevertheless, Defendants again publicly, and falsely, attributed the increase

12 in DRAM price to legitimate market forces.  In a December 4, 2001, interview published

13 on Simmtester.com, Steve Appleton, chief executive officer of Micron, was asked why

14 prices had recently increased sharply and suddenly.  He answered:

15          "I have no idea.  There clearly was a belated increase in demand as the seasonal

16          rebound we had expected two-and-a-half months earlier finally kicked in.  And,

17          clearly the Japanese are cutting back their DRAM production.  Even Hynix, which

18          is so unpredictable, cut some production by temporarily closing its Eugene, Ore.,

19          fab.  When it was running at 40K wafer capacity a month, that fab alone probably

20          had about 2.5% of the world's DRAM production."

21      59.    DRAM price increases, as well as Defendants' conspiracy, continued into

22 2002. From November 2001 to April 2002, DRAM prices tripled.  And in May 2002,

23 Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US $3.

24 That's the consensus . . . You don't need to have a meeting.  You just need to have a

25 phone call.  Everybody knows each other.  We just said 'try not to sell below US $3.'"

26 On the other hand, in a press release issued on April 15, 2002, defendant Hynix

27 represented that its increased revenues resulted from increased demand in the DRAM

28 market.

COMPLAINT OF JACO ELECTRONICS, INC.

**G.    The Department of Justice Investigation**

60.    On or about September 4, 2004, Infineon Technologies AG entered into a plea agreement with the government, pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

61.    On April 21, 2005, the Department of Justice announced that it had entered into a plea agreement with Hynix Semiconductor, Inc. pursuant to which Hynix agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

62.    On or about October 13, 2005, the Department of Justice announced that it had entered into a plea agreement with a Co-conspirator pursuant to which the Co-conspirator agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

63.    Three months later, on January 30, 2006, the Department of Justice announced that it had entered into a plea agreement with Elpida Memory, Inc. pursuant to which Elpida agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

**H.    Violations Alleged**

**FIRST CAUSE OF ACTION**

**(Violation of Sherman Act Against All Defendants)**

64.    Jaco incorporates by reference, as if fully set forth, the allegations of paragraphs 1 through 63 of this Complaint.

65.    Beginning in or about January 1997, the exact date being unknown to Jaco, and continuing thereafter at least through 2002 (the "Cartel Period"), Defendants, by and through their officers, directors, employees, agents, or other representatives, entered in a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2).

66.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and maintained the market price of DRAM as herein alleged.

17

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

67.     The contract, combination, or conspiracy consisted of a continuing

agreement, understanding, and concert of action among Defendants, the substantial terms

of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the

market for, DRAM they sold throughout the world, including the United States.

68.     Upon information and belief, for the purposes of formulating and

effectuating their contract, combination, or conspiracy, Defendants did those things they

contracted, combined or conspired to do, including:

    a.   participating in meetings and conversations to discuss the prices of and/or

        allocate the global market for DRAM;

    b.   agreeing to manipulate capacity, production, and prices so as to boost

        sagging DRAM prices in a manner that deprived direct purchasers of free

        and open competition;

    c.   issuing price announcements and price quotations in accordance with the

        agreements reached; and

    d.   selling DRAM to customers throughout the world, including the United

        States, at artificially inflated and non-competitive prices.

69.     The above combination and conspiracy has had the following effects,

among others:

    a.   price competition in the sale of DRAM by Defendants has been restrained,

        suppressed, and eliminated throughout the world, including the United

        States;

    b.   prices for DRAM sold by Defendants have been raised, fixed, maintained,

        and stabilized at artificially high and noncompetitive levels throughout the

        world, including the United States; and

    c.   purchasers of DRAM from Defendants have been deprived of the benefit of

        free and open competition in the purchase of DRAM.

70.     As a direct and proximate result of the unlawful conduct of Defendants in

furtherance of their continuing contract, combination, and/or conspiracy, Jaco has been

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

COMPLAINT OF JACO ELECTRONICS, INC.

1  injured in its business and property in that it has paid more for DRAM than it otherwise

2  would have paid in the absence of the Defendants' unlawful price fixing.

### SECOND CAUSE OF ACTION

**(Violation of California's Cartwright Act Under § § 16700 Et Seq. Of The California**

**Business & Professions Code Against All Defendants)**

6      71.    Jaco incorporates by reference, as if fully set forth, paragraphs 1 through 70

7  of this Complaint.

8      72.    Beginning in or about January 1997, the exact date being unknown to Jaco,

9  and continuing thereafter at least through 2002, Defendants by and through their officers,

10 directors, employees, agents, or other representatives violated Section 16700 *et seq*. of

11 the California Business and Professions Code ("Section 16700" or "Cartwright Act") by

12 entering into and engaging in a continuing unlawful trust in restraint of trade and

13 commerce, as described above. During this period, Defendants, and each of them, have

14 effected this unlawful trust, and violated Section 16700, by combining, conspiring, and/or

15 agreeing to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for,

16 DRAM at supra-competitive levels. Section 16720 of the Cartwright Act expressly

17 forbids the creation of such unlawful trusts.

18     73.    The purpose of Defendants' unlawful combination, conspiracy, and/or

19 agreement was to create artificially higher DRAM prices in the marketplace thereby

20 providing Defendants, and each of them, with substantially higher revenues and profits

21 than would otherwise have been the case in a truly competitive market.

22     74.    In forming, and in furtherance of, this unlawful combination, conspiracy,

23 and/or agreement, Defendants engaged in acts, practices, and courses of conduct, which

24 included, but are not limited to, the following:

25         a.  participating in meetings and/or discussions amongst themselves, as

26             discussed more fully above, for the purpose of coordinating DRAM

27             production reductions to limit supply and fix, raise, stabilize, and

28             maintain the prices of, and/or allocate the market for, DRAM;

19

COMPLAINT OF JACO ELECTRONICS, INC.

*Left margin:* crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

b. participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of exchanging information about DRAM prices and setting price ranges for DRAM to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

c. participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of setting DRAM contract prices for OEM customers to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM; and

d. using their best efforts to ensure that the prices each charged its customers for DRAM were within the price range, or at the same price, agreed to during the meetings, discussions, and/or communications held amongst themselves.

75. As a direct consequence of the Defendants' acts, practices, and course of conduct in implementing the unlawful trust, the following have occurred:

a. DRAM price competition has been restrained, suppressed, and/or eliminated, including, but not limited to, within and throughout the State of California;

b. DRAM price has been fixed, raised, maintained, and stabilized at a high and artificial level, including, but not limited to, within and throughout the State of California;

c. Jaco has been deprived of the benefit of free and openly competitive negotiations for DRAM in the marketplace; and

d. Jaco has been forced to pay artificially high prices for DRAM for use in its computer systems and network products.

76. As a direct and proximate result of Defendants' unlawful combination, conspiracy and/or agreement, Jaco has been injured in its business and property in that it

20

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1  has to pay more for DRAM than it would have paid in an otherwise free and open

2  marketplace. Jaco is unable to state its damages with precision at this time, because that

3  determination will require discovery and accounting analysis of Defendants' books and

4  records. Nevertheless, under Section 16750(a) of the Business and Professions Code,

5  Jaco is entitled to interest on the aforementioned sum from the dates of service of this

6  Complaint until entry of judgment thereon, to its costs of suit, including reasonable

7  attorneys' fees and treble damages.

### THIRD CAUSE OF ACTION

### (Unfair Competition Under § § 17200 Et Seq. Of

### The California Business & Professions Code Against All Defendants)

11  77.     Jaco incorporates by reference, as if fully set forth, paragraphs 1 through 76

12  of this Complaint.

13  78.     Jaco brings this action pursuant to Sections 17203 and 17204 of the

14  California Business and Professions Code, to obtain restitution from Defendants for acts,

15  as alleged herein, that violate Section 17200 et seq. of the California Business and

16  Professions Code, commonly known as the Unfair Competition Act.

17  79.     Beginning in or about January 1997, the exact date being unknown to Jaco,

18  and continuing thereafter at least through 2002, Defendants by and through their officers,

19  directors, employees, agents, or other representatives committed, and continue to commit,

20  acts of unfair competition, as defined by Sections 17200 et seq. of the California Business

21  and Professions Code. Defendants' acts of unfair competition, more fully alleged in

22  paragraphs 1 through 76 above, included participating in an unlawful combination,

23  conspiracy, and/or agreement to fix, raise, stabilize, and maintain the prices of, and/or

24  allocate the market for, DRAM prices and making misrepresentations, or fraudulently

25  concealing relevant information, concerning the reason for increased DRAM prices.

26  80.     Jaco has standing to bring this action, because it purchased DRAM from

27  Defendants during the period January 1997 to the present. In doing so, Jaco was injured

28  by Defendants' unlawful actions, because it paid more for DRAM than it otherwise

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

21

1  would have, as described more fully above.  These higher prices caused Jaco to lose

2  money and customers, who could not afford to purchase Jaco's products containing

3  artificially high-priced DRAM.

4    81. Defendants' conduct as alleged herein violates Section 17200 *et seq*.  The

5  unlawful combination, conspiracy, and/or agreement effected by Defendants, as well as

6  their acts, omissions, misrepresentations, practices, and non-disclosures in furtherance

7  thereof, as alleged herein, constitute a common continuous and continuing course of

8  conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business

9  acts or practices within the meaning of California Business and Professions Code,

10  Section 17200 *et seq*. including, but in no way limited to, the following:

11    a. Defendants' violations of 15 U.S.C. § 1 and Section 16700 *et seq., of

12     the California Business and Professions Code, as set forth in

13     Paragraphs 1 through 76, above;

14    b. Defendants' acts, omissions, misrepresentations, practices, and non-

15     disclosures regarding how they set DRAM prices, as described in

16     Paragraphs 1 through 76 above – whether or not in violation of 15

17     U.S.C. § 1 and Section 16700 *et seq*. of the California Business and

18     Professions Code, and whether or not concerted or independent acts –

19     are otherwise unfair, unlawful, or fraudulent;

20    c. Defendants' acts and practices, as alleged in paragraphs 1 through 76,

21     are unfair to consumers of DRAM in the State of California and

22     throughout the United States, within the meaning of Section 17200 *et*

23     *seq.*, California Business and Professions Code; and

24    d. Defendants' acts and practices, as alleged in paragraphs 1 through 76,

25     are fraudulent or deceptive within the meaning of Section 17200 *et*

26     *seq*. of the California Business and Professions Code.

27    82. The aforementioned unlawful and unfair business practices of Defendants,

28  and each of them, has injured and presents a continuing threat of injury to Jaco.

---

22

COMPLAINT OF JACO ELECTRONICS, INC.

*crowell moring*
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

1   Defendants' conduct has restrained competition in the DRAM market, has caused Jaco to

2   pay supra-competitive and artificially-inflated prices for DRAM, and has deceived, and

3   may continue to deceive, Jaco with respect to the manner in which the prices charged for

4   DRAM have been and will be set.  Thus, Jaco is informed and believes that the

5   Defendants may continue to persist in this conduct and commit the aforementioned acts

6   unless and until the Court orders the Defendants to cease and desist.

7        83.     Defendants have been unjustly enriched as a result of their wrongful

8   conduct and Defendants' unfair competition.  Jaco is accordingly entitled to equitable

9   relief, including restitution and/or disgorgement of all revenues, earnings, profits,

10  compensation, and benefits in order to restore money lost by Jaco and that may have been

11  obtained by Defendants as a result of such unfair business acts and practices, pursuant to

12  the California Business and Professions Code, Sections 17203 and 17204.  In addition,

13  Jaco seeks a permanent injunction enjoining Defendants, and their officers, directors,

14  employees, agents, or other representatives, and all others acting in concert with

15  Defendants to cease and desist from colluding together to fix, raise, stabilize, and

16  maintain the prices of, and/or allocate the market for, DRAM prices and making

17  misrepresentations, or fraudulently concealing relevant information, concerning the

18  reason for increased DRAM prices.

19  **I.      Tolling of the Applicable Statute of Limitations due to**

20  **        Fraudulent Concealment**

21       84.     Jaco incorporates by reference, as if fully set forth, the allegations of

22  paragraphs 1 through 83 of this Complaint.

23       85.     Jaco had no knowledge of the combination and conspiracy alleged herein,

24  or of any facts that might have led to the discovery thereof in the exercise of reasonable

25  diligence, until fall 2004 when Infineon Technologies AG entered into a plea agreement

26  with the United States Department of Justice, pursuant to which Infineon agreed to plead

27  guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

28

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

23

86.   Defendants engaged in a successful price-fixing conspiracy concerning DRAM computer chips, which they affirmatively concealed, at least in the following respects:

    a.   By meeting secretly to discuss prices, and customers and markets, of DRAM computer chips sold in the U.S. and elsewhere; and

    b.   By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communication in furtherance of the illegal scheme.

87.   Price increases of DRAM computer chips before and during the Cartel Period were not unusual. Jaco was therefore conditioned by experience in dealing with the Defendants of what they believed to be a competitive industry to expect price increases from time to time.

88.   Jaco could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants to avoid detection and affirmatively conceal such violations. Defendants consistently ascribed their price increases to ordinary market forces and consideration including, without limitation, falsely attributing price increases to increased demand, shortages in supply, increased manufacturing costs, increased prices of labor and of raw materials, and/or insufficient production capacity. Such false statements included, without limitation:

    a.   The statement of a Co-conspirator's vice president of marketing, in a September 13, 1999, article, alleged more fully above in paragraph 54, that higher prices were attributable to a DRAM shortage, which was concurred upon by Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG; and,

    b.   Hynix's April 15, 2002, representation, alleged in paragraph 59, that its increased revenues resulted from increased demand in the DRAM market.

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

89.     Defendants also falsely informed their customers that they were unable to sell their products at a lower price due to increased manufacturing costs, increased prices of labor and of raw materials, and insufficient production capacity.

90.     Jaco had no reason to disbelieve these statements.  Furthermore, most of the explanations provided by Defendants involved non-public and/or proprietary information completely in Defendants' control such that Jaco could not verify their accuracy. Defendants' purported reasons for their price increases of DRAM were materially false and misleading and were made for the purpose of concealing Defendants' anti-competitive scheme as alleged herein.  In truth, at all relevant times, the price of DRAM was artificially inflated and maintained as a direct result of the Defendants' anti-competitive scheme, the operation of which was a substantial (but undisclosed) factor in the pricing of DRAM during the relevant period.

91.     As a result of the fraudulent concealment of the conspiracy, Jaco asserts the tolling of the applicable statute of limitations affecting Plaintiffs' claims.

**J.      Damages/Restitution**

92.     During the relevant period, Jaco purchased DRAM from Defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than it would have paid in the absence of such antitrust violations.  As a result, Jaco has sustained damages to its business and property and defendants wrongfully acquired money from Jaco in an amount to be determined at trial.

**K.      Prayer for Relief**

WHEREFORE, Jaco demands judgment against defendants, and each of them, as follows:

93.     A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade of commerce in violation of: Section 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2); Sections 16700 *et seq.* and Sections 17200 *et seq.* of the California Business and Professions Code;

25

COMPLAINT OF JACO ELECTRONICS, INC.

94.     An injunction enjoining, preliminarily and permanently, Defendants and all those acting in concert or in active participation with Defendants from continuing the unlawful combination and conspiracy alleged herein;

95.     An award to Jaco of damages, as provided by law and as appropriate, and joint-and-several judgments in favor of Jaco against defendants, and each of them, in an amount to be trebled in accordance with the federal and California antitrust laws;

96.     For restitution and disgorgement of revenues, earnings, profits, compensation, and benefits that have been wrongfully taken by defendants from Jaco as provided by 17200 *et seq.* of the California Business & Professions Code;

97.     An award to Jaco for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

26

1    98.    An award to Jaco for such other and further relief as the nature of this case

2    may require or as this Court deems just, equitable and proper.

3

4    DATED: February 28 , 2007          CROWELL & MORING LLP

5

6                                       By: _____
                                             Kent A. Gardiner
7                                            Kathryn D. Kirmayer
                                             Jerome A. Murphy
8                                            CROWELL & MORING LLP
                                             1001 Pennsylvania Avenue, N.W.
9                                            Washington, D.C. 20004
                                             Phone: 202-624-2578
10                                           Fax:    202-628-5116

11                                           Daniel A. Sasse
                                             Christine E. Cwiertny
12                                           CROWELL & MORING LLP
                                             3 Park Plaza, 20th Floor
13                                           Irvine, CA 92614-8505
                                             Phone: 949-263-8400
14                                           Fax:    949-263-8414

15                                           Paul P. Eyre
                                             Melissa Maxman
16                                           Tracy Cole
                                             BAKER & HOSTETLER LLP
17                                           666 Fifth Avenue
                                             New York, NY 10103
18                                           Telephone: 212-589-4200
                                             Facsimile: 212-589-4201

19                                           Counsel for Plaintiffs
20                                           Jaco Electronics, Inc.

21

22

23

24

25

26

27

28

                                  27
                  COMPLAINT OF JACO ELECTRONICS, INC.

## DEMAND FOR JURY TRIAL

99.     Jaco demands a trial by jury, pursuant to Federal Rules of Civil Procedure,
Rule 38(b), of all triable issues.


DATED:  February **29**, 2007          CROWELL & MORING LLP


By: _____
    Kent A. Gardiner
    Kathryn D. Kirmayer
    Jerome A. Murphy
    CROWELL & MORING LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, D.C.   20004
    Phone:  202-624-2578
    Fax:     202-628-5116

    Daniel A. Sasse
    Christine E. Cwiertny
    CROWELL & MORING LLP
    3 Park Plaza, 20th Floor
    Irvine, CA  92614-8505
    Phone:  949-263-8400
    Fax:     949-263-8414

    Paul P. Eyre
    Melissa Maxman
    Tracy Cole
    BAKER & HOSTETLER LLP
    666 Fifth Avenue
    New York, NY 10103
    Telephone:  212-589-4200
    Facsimile:  212-589-4201

    Counsel for Plaintiff
    Jaco Electronics, Inc.

COMPLAINT OF JACO ELECTRONICS, INC.

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949 263-8400

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

DATED:  February **29**, 2007          CROWELL & MORING LLP

By: _____
Kent A. Gardiner
Kathryn D. Kirmayer
Jerome A. Murphy
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.   20004
Phone:  202-624-2578
Fax:     202-628-5116

Daniel A. Sasse
Christine E. Cwiertny
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Phone:  949-263-8400
Fax:     949-263-8414

Paul P. Eyre
Melissa Maxman
Tracy Cole
BAKER & HOSTETLER LLP
666 Fifth Avenue
New York, NY 10103
Telephone:  212-589-4200
Facsimile:  212-589-4201

Counsel for Plaintiff
Jaco Electronics, Inc.

DC2863056v4  (Cam No. 101073.005)

COMPLAINT OF JACO ELECTRONICS, INC.