UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL AMERICAN SEMICONDUCTOR, INC. v. HYNIX SEMICONDUCTOR, INC., et al., | Nos.   C 07-1200<br>           C 07-1207<br>           C 07-1212<br>           C 06-2915 |
| EDGE ELECTRONICS, INC. v. HYNIX SEMICONDUCTOR, INC., et al., | **ORDER GRANTING MOTION TO DISQUALIFY COUNSEL** |
| JACO ELECTRONICS, INC. v. HYNIX SEMICONDUCTOR, INC., et al., | |
| UNISYS CORPORATION v. HYNIX SEMICONDUCTOR, INC., et al. | |
| _____/ | |

Before the court is defendants Infineon Technologies AG and Infineon Technologies North America Corporation's (collectively "Infineon") motion to disqualify John Vandevelde ("Vandevelde") and Crowell & Moring LLP ("Crowell") from representing plaintiffs All American Semiconductor, Inc., Edge Electronics, Inc., Jaco Electronics, Inc. and Unisys Corporation (collectively "plaintiffs") against Infineon in this litigation. Plaintiffs oppose the motion. Infineon's motion to disqualify came on for hearing before this court on December 10, 2008. Infineon appeared through its counsel, Aton Arbisser. Plaintiffs appeared through their counsel, Jerome Murphy of Crowell. Having carefully read the parties' papers and considered the relevant legal authority, the court hereby GRANTS Infineon's motion to disqualify counsel, for the reasons stated below.

## BACKGROUND

These cases are related to an antitrust multi-district litigation ("MDL") action (In re DRAM Antitrust Litigation C 02-1486 PJH) that generally alleges a horizontal price-fixing conspiracy carried out by numerous defendants, in violation of various state and federal antitrust laws. Plaintiffs are generally direct purchasers of dynamic random access

memory ("DRAM") chips - a type a semiconductor chip used in computers and other electronic equipment - who opted out of the direct purchaser class actions in the related MDL.  While there are six different individual cases that belong to the "opt-out" category of DRAM cases, only four of those cases - <u>All American Semiconductor, Inc. v. Hynix Semiconductor, Inc., et al.</u>, No. C 07-1200 PJH, <u>Edge Electronic, Inc. v. Hynix Semiconductor, Inc., et al.</u>, No. C 07-1207 PJH, <u>Jaco Electronics, Inc. v. Hynix Semiconductor, Inc., et al.</u>, No. C 07-1212 PJH and <u>Unisys Corporation v. Hynix Semiconductor, Inc., et al.</u>, No. C 06-2915 PJH - are before the court here.[1]  These individual cases, like the related MDL, follow a United States Department of Justice ("DOJ") investigation that resulted in the filing of criminal charges of illegal price-fixing against Infineon and some of its executives.

From January 1980 to September 30, 2008, Vandevelde was an attorney at Lightfoot, Vandevelde, Sadowsky, Crouchley, Rutherford & Levine LLP ("Lightfoot Vandevelde").  Vandevelde Decl. ¶ 3.  In or around November 2003, Lightfoot Vandevelde represented Infineon Technologies AG's Vice President of Sales, Gunter Hefner ("Hefner"), in an investigation by the DOJ regarding pricing of DRAM chips.  Id. ¶ 4.  This investigation resulted in the filing of criminal charges, a guilty plea, and sentencing of Hefner.  Id.  Vandevelde's representation of Hefner in this matter ended in or around December 2005.  Id.  Vandevelde subsequently represented Hefner in a related civil matter, entitled <u>Petro Computer Sys., Inc. v. Micron Technology et al.</u>, C 05-2472 PJH ("Petro").[2]  Arbisser Decl. ¶ 6.  Vandevelde's representation of Hefner in that matter was limited to preparing Hefner

---

[1] There are two other opt-out cases, including one brought by Sun Microsystems, Inc. ("Sun"), which is also represented by Crowell.  Infineon is not a party to the action brought by Sun.

[2] <u>Petro</u> is the lead indirect purchaser case in the MDL, involving plaintiffs that indirectly purchased DRAM from one or more named defendants.

for a deposition in May 2006.  Vandevelde Decl. ¶ 5.[3]

During the course of his representation of Hefner, Vandevelde, Hefner, Infineon and their counsel, entered into a joint defense agreement (the "JDA").  Arbisser Decl. ¶ 4; Vandevelde Decl. ¶ 17.  The JDA set forth the agreement among the attorneys, their firms and their clients in connection with the investigation of the DRAM Industry being conducted by, among others, the DOJ, as well as related civil litigation (referred to collectively as the "Investigation").  Vandevelde Decl. ¶ 21.  The JDA contained a confidentiality provision.  Also, in Paragraph 13 of the JDA, the parties agreed to waive possible conflicts that might arise out of the joint defense relationship.  Arbisser Decl. ¶ 4.  It stated as follows:

> While the precise nature of each possible conflict that may arise in the future cannot be identified at the present time, each client member after being informed of the general nature of the conflicts that may arise, knowingly, and intelligently waives any conflict of interest that may arise on account of this Agreement, including specifically from an attorney member of this Agreement, other than his, her or its own attorney, cross-examining him, her or it at trial or in any other proceeding arising from or relating to the above Investigation.  Each client member further waives any claim of conflict of interest which might arise by virtue of participation by his, her or its attorney in this Agreement.  Each attorney member and client member waives any right to seek the disqualification of counsel for any other attorney member who is a party to this Agreement based upon a communication of joint-defense privileged information.

Id.  According to Infineon, pursuant to the JDA, it shared confidential information with Vandevelde in the course of both the criminal and civil matters in which Vandevelde represented Hefner.  Id. ¶¶ 5-6.  Specifically, Infineon claims that it collaborated extensively with Vandevelde in the prior litigation, including sharing confidential and privileged information regarding Infineon's legal strategy as well as other information Infineon obtained during its investigation of the alleged price-fixing conspiracy.  See Arbisser Decl. ¶¶ 5-6; Jeff Smith Decl. ¶¶ 1-3; Michael Blechman Decl. ¶¶ 1-3; Julian Brew Decl. ¶¶ 1-3.

On October 6, 2008, Lightfoot Vandevelde announced that it had merged with Crowell.  Arbisser Decl. ¶ 8.  The Lightfoot Vandevelde facilities became Crowell's Los

---

[3] In November 2005, Lightfoot Vandevelde also represented Hefner at his deposition in another related case commenced in the Eastern District of Texas, entitled Tessera, Inc. v. Micron Technology, Inc., et al., C-05-94.  Vandevelde Decl. ¶ 6.

Angeles office, and Lightfoot Vandevelde attorneys became Crowell partners or associates. Id. Vandevelde joined Crowell as a partner. Id.; Vandevelde Decl. ¶¶ 7, 9. In his declaration, Vandevelde attests that because Hefner did not become a client of Crowell, all of the files related to Lightfoot Vandevelde's representation of Hefner remained the property of Lightfoot Vandevelde, and no one at Crowell had or has access to these files, except Crowell's Information Technology staff. Vandevelde Decl. ¶¶ 9-12. Vandevelde further attests that, in addition to himself, only three other former employees of Lightfoot Vandevelde, one partner and two paralegals, were involved in representing Hefner. Id. ¶ 13.

On October 8, 2008, Infineon wrote to Crowell demanding that Crowell, due to a conflict of interest, withdraw from representing plaintiffs against Infineon in the following cases: All American Semiconductor, Inc. v. Hynix Semiconductor, Inc., et al., No. C 07-1200 PJH, Edge Electronic, Inc. v. Hynix Semiconductor, Inc., et al., No. C 07-1207 PJH, Jaco Electronics, Inc. v. Hynix Semiconductor, Inc., et al., No. C 07-1212 PJH and Unisys Corporation v. Hynix Semiconductor, Inc., et al., No. C 06-2915 PJH. Jerome Murphy ("Murphy") Decl., Exh. A. Infineon stated that the conflict of interest arose from the fact that Vandevelde joined Crowell after representing Hefner in prior litigation substantially related to the current litigation - matters arising out of the same alleged DRAM price-fixing conspiracy - in which Crowell is adverse to Infineon. Id. Infineon stated that it would not consent to Crowell's ongoing representation of plaintiffs while Crowell was in possession of Infineon's confidential information obtained during substantially related proceedings in which Vandevelde and Infineon engaged in an active joint defense where Infineon paid Vandevelde's fees and collaborated with him extensively on defense strategy, as well as prepared Hefner for meetings with the DOJ and for his deposition in the Petro matter. Id.

On October 9, 2008, Crowell, despite its belief that there was no adversity between Hefner and its current clients in this litigation, decided to erect an "ethics wall" to protect against the inadvertent disclosure of confidential information to personnel at Crowell that

the Lightfoot Vandevelde lawyers learned during their representation of Hefner.  Barry E. Cohen ("Cohen") Decl. ¶¶ 8-9.  Specifically, Crowell issued an "Ethics Wall Notice" on October 9 and 14, 2008, which directed former Lightfoot Vandevelde employees not to discuss or share any confidential information they may have received in the course of their representation of Hefner with anyone at Crowell.  Id. ¶ 11.  The notice also stated that all Crowell attorneys and staff assigned to DRAM related cases were prohibited from discussing or otherwise accessing information related to Lightfoot Vandevelde's representation of Hefner.  Id.  According to Crowell, Crowell's document management system has been specially coded so that none of the former attorneys and staff of Lightfoot Vandevelde can access any documents related to the current litigation.  Id. ¶ 13.

On October 15, 2008, Crowell informed Infineon that it would not withdraw as counsel for plaintiffs.  Murphy Decl., Exh. B.  On October 29, 2008, Infineon filed a motion to disqualify Vandevelde and Crowell from representing plaintiffs against Infineon in this litigation.  Plaintiffs filed an opposition on November 19, 2008.  A reply was filed on November 25, 2008.

## DISCUSSION

Infineon argues that disqualification of Vandevelde and Crowell is warranted on the basis that a conflict of interest arose when Lightfoot Vandevelde merged with Crowell because the current litigation is substantially related to prior litigation in which Vandevelde represented Hefner and received confidential information belonging to Infineon.  According to Infineon, the information Vandevelde received during his representation of Hefner is highly material to the current litigation insofar as the plaintiffs in this litigation seek damages from Infineon for the same alleged DRAM price-fixing that was at issue in the prior litigation. In short, Infineon maintains that because Vandevelde possesses Infineon's confidential information related to the current litigation, and because his knowledge is imputed to his entire firm, Vandevelde and Crowell should be disqualified from representing plaintiffs who are proceeding against it.  Plaintiffs counter by arguing that disqualification is not warranted

for four reasons: (1) there is no conflict of interest between Infineon and Crowell since neither Lightfoot Vandevelde nor Crowell has ever had an attorney-client relationship with Infineon, and hence neither firm has ever owed Infineon a duty of loyalty; (2) Crowell, upon learning of Vandevelde's representation of Hefner in the prior litigation, immediately enacted a broad ethical wall between all attorneys and staff from Lightfoot Vandevelde and all other attorneys and staff of Crowell with respect to this litigation; (3) in the JDA, Infineon expressly agreed that it could not assert the conflict of interest it now raises and could not seek disqualification of Vandevelde based upon Vandevelde's participation in the joint defense (i.e., Infineon waived the conflict by signing the JDA); and (4) Infineon has not shown that it communicated actual confidential information to anyone at Lightfoot Vandevelde or Crowell. The court will discuss these arguments individually below.

A.    Legal Standards

    1.    Motion to Disqualify Counsel

Motions to disqualify counsel are decided under state law. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers. Visa U.S.A., Inc. v. First Data Corp., 241 F.Supp.2d 1100, 1103 (N.D. Cal. 2003) (citing United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir. 1996)); see also Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal.App.4th 1832, 1837-38 (1995) ("A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in the furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every manner pertaining thereto.' "). Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is a drastic measure that is generally disfavored and should only be imposed when absolutely necessary. Concat LP v. Unilever, PLC, 350 F.Supp.2d 796, 814-15 (N.D. Cal. 2004). "The issue of disqualification 'ultimately involves a conflict between the clients' right to counsel of their choice and the need to maintain

6

1 ethical standards of professional responsibility.  The paramount concern, though, must be
2 the preservation of public trust in the scrupulous administration of justice and the integrity of
3 the bar.  The recognized and important right to counsel of one's choosing must yield to
4 considerations of ethics that run to the very integrity of our judicial process.' "
5 Metro-Goldwyn-Mayer, 36 Cal.App.4th at 1838; see also People ex rel. Dept. of
6 Corporations v. SpeeDee Oil Change Syst., 20 Cal.4th 1135, 1145 (1999).

        2.        Disqualification of Counsel Based on A Conflict of Interest

In determining matters of disqualification, this court follows the standards articulated in the California Rules of Professional Conduct.  Visa, 241 F.Supp.2d at 1103; see Civ. L. R. 11- 4.  Rule 3-310 of the California Rules of Professional Conduct provides as follows:

> (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

Although conflicts relating to the disclosure of confidential communications usually arise when a former client seeks to disqualify an attorney who has accepted employment adverse to the former client where, by reason of the former representation, the attorney had obtained confidential information material to their current employment, disqualification may also be proper when an attorney-client relationship is not at issue.  See Oaks Management Corp. v. Superior Court, 145 Cal.App.4th 453, 464 (2006); Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal.App.4th 223, 232-33 (1999) ("an attorney's receipt of confidential information from a non-client may lead to the attorney's disqualification"); see also United States v. Henke, 222 F.3d 633, 637 (9th Cir. 2000) (a joint defense agreement can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue.).  A conflict of interest may arise from an attorney's relationship with a non-client in two circumstances: (1) where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity; and (2) where the attorney has acquired confidential information in the course of such a relationship which will be, or

may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client. Morrison Knudsen, 69 Cal.App.4th at 232 (citing William H. Raley Co. v. Superior Court, 149 Cal.App.3d 1042, 1047 (1983) ("Raley")).[4]

In applying Rule 3-310, California courts distinguish between successive representations and simultaneous representations. See Flatt v. Superior Court, 9 Cal.4th 275, 283-84 (1994). Where the potential conflict is one that arises out of successive representation of clients with adverse interests, the chief fiduciary value jeopardized is that of client confidentiality. Id. at 283. The test used for disqualification in those instances is whether there is a "substantial relationship" between the subjects of the former and current representations. Id. at 283-84. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. Id. at 283; see also SpeeDee Oil, 20 Cal.4th at 1146. "This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' " Global Van Lines, Inc. v. Superior Court, 144 Cal.App.3d 483, 489 (1983).

In determining whether a "substantial relationship" exists a court should consider the similarities between the two factual situations, similarities in legal questions posed, and the nature and extent of the attorney's involvement with the case and whether he was in a position to learn of the client's policy or strategy. Adams v. Aerojet-General Corp., 86

---

[4] In Morrision Knudsen, the court observed that while the Raley court relied upon former rule 5-102(B) of the State Bar Rules of Professional Conduct, which has been amended and replaced by current rule 3-310, Raley's reasoning remains good law. Morrison Knudsen, 69 Cal.App.4th at 232.

8

Cal.App.4th 1324, 1332 (2001). In addition, it must be shown that the information from the prior representation is material to the current representation. Morrison Knudsen, 69 Cal.App.4th at 234. As part of its review, the court should examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy. Id. Successive representations are substantially related where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." Jessen v. Hartford Casualty Ins. Co., 111 Cal.App.4th 698, 713 (2003) (citations omitted).

B.  Legal Analysis

The court begins its substantive analysis by observing that the parties, during the hearing on this matter, agreed that the following facts are undisputed: (1) Vandevelde's representation of Hefner and participation in the JDA involved matters substantially related to the current litigation; (2) Infineon paid Vandevelde's fees in those matters and collaborated with Vandevelde on defense strategy, as well as prepared Hefner for meetings with the DOJ and for his deposition in Petro; (3) Vandevelde received confidential information from Infineon during his representation of Hefner; (4) Vandevelde and Crowell never had an attorney-client relationship with Infineon and neither had a duty of loyalty - at least not based on an attorney-client relationship; and (6) the JDA contained a confidentiality provision.

    1.    Vandevelde Has A Conflict of Interest Under The Substantial Relationship Test

Plaintiffs argue that Crowell should not be disqualified from representing them against Infineon in the current litigation because there is no conflict of interest between Infineon and Crowell since neither Lightfoot Vandevelde nor Crowell ever had an attorney-client relationship with Infineon, and hence neither firm has ever owed Infineon a duty of

1 loyalty.[5] The court disagrees. This is because a conflict of interest may be created when, 2 as here, an attorney (Vandevelde) has acquired confidential information about a non-client 3 (Infineon) in connection with his representation of a client (Hefner), such as when an 4 attorney obtains confidential information about a co-defendant of a client during a joint 5 defense of an action. Indeed, contrary to plaintiffs' contention, the fact that Vandevelde 6 and Infineon never had an attorney-client relationship is not determinative of whether 7 disqualification of Crowell is appropriate because "an attorney's receipt of confidential 8 information from a non-client may lead to the attorney's disqualification." Morrison 9 Knudsen, 69 Cal.App.4th at 232-33.

10 In Morrison Knudsen, the court made it clear that there are situations where 11 confidential information obtained through the representation of a third-party could lead to 12 attorney disqualification. There, a law firm was retained by a corporation's insurance 13 underwriters to act as "monitoring counsel" over the defense attorneys Morrison retained to 14 litigate errors and omissions claims. In that capacity, it had received confidential 15 communications from Morrison's defense counsel concerning the progress of cases and 16 Morrison's potential liability. As monitoring counsel, the law firm oversaw various 17 negligence claims against the corporation; was substantially and personally involved in the 18 corporation's cases; had considerable exposure to the corporation's litigation policies and 19 strategies; had close familiarity with the corporation's key decision makers; and maintained 20 an ongoing relationship as monitoring counsel. See Morrison Knudsen, 69 Cal.App.4th at 21 235-37. Although the firm had never directly represented Morrison, the court found that the 22 law firm received confidential information about the corporation which was material to the 23 current client's claims for negligence against a subsidiary of the corporation. Id. at 233-34. 24 The court concluded the situation was "analogous to one of successive representation" and 25 the proper standard for assessing whether the information the firm received as the

---

[5] In support of this argument, plaintiffs rely on Oaks Management, 145 Cal.App.4th 453. However, because Oaks Management is factually distinguishable from the present circumstances, it does not control.

10

underwriters' counsel disqualified it from representing a client in a negligence action against a subsidiary of the company was the "substantial relationship" test ordinarily applied in successive representation cases. Id.

Furthermore, a joint defense agreement can create a disqualifying conflict where information gained in confidence by an attorney becomes an issue. See United States v. Henke, 222 F.3d 633, 637 (9th Cir. 2000). In Henke, the court, cited with approval, Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir. 1977), which stated:

> Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense.

Id.

Because it is undisputed that Vandevelde received confidential information from Infineon in the course of his representation of Hefner that is material to plaintiffs' claims in this litigation, and because Vandevelde recently joined Crowell, the firm representing plaintiffs, the circumstances here are analogous to one of successive representation. Vandevelde's participation in the JDA and receipt of confidential information from Infineon during the joint defense created an expectation on the part of Infineon that this information would be kept confidential. This was a reasonable expectation, particularly given that the JDA contained a confidentiality provision. Moreover, Crowell's reaction to discovering that Vandevelde had previously represented Hefner in prior litigation relating to DRAM price-fixing - immediately erecting an ethical wall - suggests that Crowell recognized that Vandevelde had a duty to protect the confidential information he received from Infineon in the course of that litigation. Indeed, because Vandevelde was privy to Infineon's confidential information as a participant in the JDA, Infineon had a reasonable expectation that it would not see Vandevelde subsequently appear on behalf of Infineon's adversary

11

armed with this highly pertinent, indeed potentially devastating, information. Accordingly, the proper standard for assessing whether the information Vandevelde received as Hefner's counsel disqualifies him from representing plaintiffs is the "substantial relationship" test ordinarily applied in successive representation cases.

Applying this test to the present circumstances, the court finds that a conflict of interest exists. It is undisputed that the current litigation is substantially related to the litigation in which Vandevelde represented Hefner and engaged in an active joint defense with Infineon, and that in the course of that representation, Vandevelde received Infineon's confidential information. As such, it is clear that Vandevelde has a conflict of interest insofar as he possesses confidential information that is material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues. Vandevelde is therefore disqualified from representing plaintiffs against Infineon in this litigation.

To the extent that plaintiffs argued in their opposition that Infineon has failed to show that it communicated actual confidential information to Vandevelde, the court finds this argument without merit given the declarations submitted with Infineon's reply brief and in light of the concession made by Crowell at the hearing. To the extent plaintiffs argue that Infineon has failed to show that Vandevelde has actually communicated confidential information to Crowell, the court finds this argument to similarly lack merit. Because Infineon has demonstrated the requisite substantial relationship between Vandevelde's former representation and the current litigation disqualification is mandatory. Flatt, 9 Cal.4th at 283; see also Trone v. Smith, 621 F.2d 994, 1001 (9th Cir. 1980) ("Disqualification does not depend upon proof of the abuse of confidential information. Because of the sensitivity of client confidence and the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change sides in factually related cases."). In light of this finding, the court also concludes that the conflict must be imputed to the entire Crowell firm. Flatt, 9 Cal.4th at

283. Thus, the remaining questions are whether: (1) the ethical wall erected by Crowell obviates the need for disqualification of the entire Crowell law firm; and (2) the waiver provision in the JDA operates as a prospective waiver of Vandevelde's conflict of interest.

> 2. The Ethical Wall Erected By Crowell Does Not Prevent Crowell's Disqualification

Plaintiffs argue that disqualification of the entire Crowell firm is not warranted because Crowell erected a broad "ethical wall" between former Lightfoot Vandevelde employees and Crowell attorneys involved in this litigation. Plaintiffs assert that Vandevelde has not worked on the instant matter on behalf of them, and that he is located in a satellite office in Los Angeles, far removed from the attorneys and files in Washington D.C. principally associated with this litigation. They further assert that all Crowell attorneys involved in this litigation have confirmed that they have not had any communications with any of the Lightfoot Vandevelde attorneys concerning the litigation or Vandevelde's prior representation of Hefner, and the ethical wall prohibits these attorneys from having any such communications in the future. The question, then, is whether Crowell is nonetheless vicariously disqualified.

"The established rule in California is that where an attorney is disqualified from representing a client because that attorney had previously represented a party with adverse interests in a substantially related matter that attorney's entire firm must be disqualified as well, regardless of efforts to erect an ethical wall." Hitachi, Ltd. v. Tatung Co., 419 F.Supp.2d 1158, 1161 (N.D. Cal. 2006) (footnote omitted) (citing Klein v. Superior Court, 198 Cal.App.3d 894, 912-14 (1988); Henriksen v. Great American Savings & Loan, 11 Cal.App.4th 109, 117 (1992); Flatt, 9 Cal.4th at 283). In Hitachi, the court, after discussing the relevant case law, concluded that established law in California rejects ethical walls. Hitachi, 419 F.Supp.2d at 1164. Plaintiffs have neither offered persuasive argument nor cited to controlling authority casting doubt on this holding. In support of their position, plaintiffs rely on the Ninth Circuit's decision In re County of Los Angeles, 223 F.3d 990, which observed that the California Supreme Court may have signaled a more flexible

13

approach to vicarious disqualification, such as using an ethical screen. Id. at 995-96. Plaintiffs' reliance on the Ninth Circuit's approval of an ethical wall in lieu of disqualification in In re County of Los Angeles, 223 F.3d at 997, is misplaced, as that case involved a United States Magistrate Judge's return to private practice, not the situation presented here, in which non-government counsel moves from firm to firm. See id. at 992, 997. The scope of the Ninth Circuit's decision in In re County of Los Angeles is limited and not directly applicable to the instant circumstances. Additionally, subsequent to In re County of Los Angeles, the California Supreme Court has again addressed the issue of vicarious disqualification and again chosen not to allow an ethical wall to rebut the presumption. City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839 (2006) (entire city attorney's office automatically disqualified based on head attorney's prior representation of an adverse client while in private practice).

      Plaintiffs have not cited, and this court could not find, California case law approving use of an ethical wall in lieu of disqualification in the circumstances presented here. Even though as plaintiffs, and some of the cases upon which they rely, have noted, the law in California might well be headed in that direction. It is however, not there yet. And while the court agrees to some extent that given the realities of today's legal climate, with increased mobility of lawyers and frequent mergers of law firms, that mandatory vicarious disqualification may be both unfair and unnecessary in some cases, the court is not persuaded this is such a case. It is undisputed that Vandevelde previously worked extensively for Hefner in proceedings involving the same alleged DRAM price-fixing at issue in this litigation, and that in those proceedings Vandevelde was privy to Infineon's confidential information as a participant in the JDA. It is also undisputed that subsequent to Vandevelde's representation of Hefner, his entire law firm merged with Crowell. Thus, even assuming Crowell erected a broad ethical wall immediately after discovering Vandevelde's participation in the prior litigation, the court nonetheless finds that disqualification is proper because the current litigation and the prior litigation in which

14

Vandevelde represented Hefner are so substantially similar.  Further, plaintiffs have not cited a single case in which a court has held that an ethical wall prevented the vicarious disqualification of an entire firm where the matters were as closely related as the matters at issue here, and where the disqualified attorney had spent so much time on the earlier matter and was directly privy to confidential information as a participant in a joint defense agreement.

To the extent plaintiffs rely on this court's decision in <u>Visa</u> and the unpublished decision of <u>Friskit, Inc., v. RealNetworks, Inc.</u>, 2007 WL 1994203 (N.D. Cal. 2007) in support of their argument that the use of ethical walls can serve to avoid vicarious disqualification, the court finds such reliance misplaced.  Both of those cases are readily distinguishable and are therefore unavailing. <u>Visa</u> is factually distinguishable in several critical respects.  First, that case involved a valid prospective waiver.  See <u>Visa</u>, 241 F.Supp.2d at 1105-1108.  There, the court allowed the use of an ethical wall where the adverse client prospectively waived the type of conflict that subsequently arose.  See <u>id.</u> at 1110.  Second, the subject matter of the representations at issue were not found to be substantially (or at all) similar.  See <u>id.</u> at 1104-05.  Third, the case involved concurrent, not successive representations.  See <u>id.</u>  As for <u>Friskit</u>, that case is also distinguishable.  There, the court concluded that a law firm was not vicariously disqualified from representing RealNetworks, Inc. ("Real") because it found that an ethical wall was sufficient to protect Friskit, Inc.'s ("Friskit") interest in confidentiality where the law firm subsequently represented Real after receiving Friskit's confidential information during a brief two-hour, exploratory discussion with Friskit's CEO about a possible engagement of the firm.  <u>Friskit</u>, 2007 WL 1994203 at *1-2.  Because the <u>Friskit</u> case is clearly distinguishable from the present circumstances, it is not persuasive authority supporting plaintiffs' position.  This is particularly so given the extent to which Vandevelde was privy to Infineon's confidential information as a participant in the JDA.

       3.       The Waiver Provision in the JDA Does Not Operate as A Valid Prospective Waiver of Vandevelde's Conflict of Interest

Plaintiffs argue that even if there was a conflict of interest arising out of Vandevelde's prior representation of Hefner, Infineon has waived this conflict by agreeing in writing, in Paragraph 13 of the JDA, that no member of the joint defense group later could assert a conflict of interest based upon participation in the JDA. That is, the JDA serves as a prospective waiver of Vandevelde's conflict of interest.

An advance waiver of potential future conflicts is permitted under California law, even if the waiver does not specifically state the exact nature of the future conflict. Visa, 241 F.Supp.2d at 1105 (citing Maxwell v. Superior Court, 30 Cal.3d 606, 622 (1982)). In a situation involving a prospective waiver, California law does not require that every possible consequence of a conflict be disclosed for a consent to be valid; rather, the only inquiry that need be made is whether the waiver was fully informed. Visa, 241 F.Supp.2d at 1105. An evaluation of whether full disclosure was made and whether the client made an informed waiver is a fact-specific inquiry. Id. at 1106. Since the waiver must be informed, a second waiver may be required if the original waiver insufficiently disclosed the nature of a subsequent conflict. Id. Factors that may be considered include: (1) the waiver's breadth; (2) its temporal scope, i.e., whether it waived only current conflicts or applied to all conflicts in the future; (3) the quality of the conflict discussion between attorney and client; (4) the specificity of the waiver; (5) the nature of the actual conflict, i.e., whether the attorney sought to represent both clients in the same dispute or in unrelated matters; (6) the sophistication of the client; and (7) the interests of justice. Id. (citing, e.g., SpeeDee Oil, 20 Cal.4th at 1145; Zador Corp., N.V. v. Kwan, 31 Cal.App.4th 1285 (1995)).

Applying these factors to Paragraph 13 of the JDA, the court finds that Infineon did not waive the conflict at issue in this litigation. The court is not convinced that Infineon gave its informed consent to waive its right to seek disqualification of Vandevelde under the circumstances. Plaintiffs did not offer persuasive evidence or argument indicating that the prospective waiver provision sufficiently disclosed the nature of the conflict that has subsequently arisen between the parties, and that Infineon knowingly and specifically

16

waived its right to object to this conflict. Neither the language of the JDA nor the argument advanced by plaintiffs compels the conclusion that Infineon consented to Vandevelde prospectively undertaking adverse representation on behalf of plaintiffs against Infineon in substantially related litigation. Indeed, the only specific conflict waived by the parties in the JDA was the conflict that could arise if an attorney member of the joint defense (e.g., Vandevelde) cross-examined a defendant that the attorney member did not represent (i.e., Infineon) at trial or in any other proceeding arising from or relating to the joint defense. In other words, the parties to the JDA waived any duty of confidentiality for purposes of cross-examining testifying defendants. To the extent that plaintiffs urge the court to adopt a broader reading of the Paragraph 13, the court declines to do so.

        4.        Vicarious Disqualification of Crowell is Warranted

Plaintiffs argue that vicarious disqualification is not warranted because disqualification would impose immense prejudice upon them and cause undue delay. Specifically, they argue that they will be prejudiced because Crowell has particular expertise in complex antitrust matters and, given the volume and complexity of discovery in this litigation, they will incur enormous cost for a new firm to get up to speed on that discovery, especially since trial is approximately six months away. Plaintiffs maintain that it would be impossible for a new firm to come into this litigation now, establish the confidence and trust with them needed to try cases of this complexity and magnitude, fully learn and understand the discovery record and prepare for a lengthy trial in only six months.

"Trial courts in civil cases have the power to order disqualification of counsel when necessary for the furtherance of justice. Exercise of that power requires a cautious balancing of competing interests." Raley, 149 Cal.App.3d at 1048 (citations omitted). In Raley, the court set forth a balancing test for the disqualification of attorneys based on a conflict of interest, which provides as follows:

> [T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution

>of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

Raley, 149 Cal.App.3d at 1048; Concat, 350 F.Supp.2d at 814.  "A motion to disqualify counsel brings the client's right to the attorney of his or her choice into conflict with the need to maintain ethical standards of professional responsibility." Knight v. Ferguson, 149 Cal.App.4th 1207, 1212 (2007) (quotation marks omitted).  "The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." Id. (quotation marks omitted).  Generally, "[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." Raley, 149 Cal.App.3d at 1048 (quotation marks omitted).  However, because automatic or mechanical application of the vicarious disqualification rule can be harsh and unfair to both a law firm and its client, the better approach is to examine the circumstances of each case in light of the competing interests noted above. Id. at 1049.

      Applying the balancing test set forth in Raley to the present circumstances, the court finds that disqualification of the entire Crowell firm is warranted.  First, plaintiffs have not shown that Infineon's motion to disqualify was tactically motivated or otherwise brought for an improper purpose, such as to delay the proceedings.  Second, while the court is mindful of the financial ramifications that disqualification of plaintiffs' counsel may subject plaintiffs to at this stage of the litigation, plaintiffs will not, as they suggest, be required to hire new counsel and prepare for a trial that is only six months away.  Plaintiffs are simply mistaken in this regard.  Only the dispositive motions involving Sun are being heard in December 2008 and only the trial of Sun will go forward in June 2009.  The dispositive motions and trial for the four plaintiffs involved in this motion have yet to be scheduled.  Thus, there is plenty of time for new counsel to get up to speed.  Moreover, the court would not create a schedule that denied new counsel such an opportunity.  The court is responsible for preserving the balance between plaintiffs' right to their own freely chosen counsel and the

profession's need to preserve the highest ethical standards. Under the circumstances, the recognized and important right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process. It is undisputed that plaintiffs' right to counsel of their choice is important. However, the fairness and integrity of the judicial process and Infineon's legitimate interest in litigating this action free from the risk that confidential information may be unfairly used against it outweighs plaintiffs' interest in being represented by Crowell. Moreover, disqualifying Crowell comports with the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS Infineon's motion to disqualify counsel. Vandevelde and the entire Crowell firm are disqualified from representing plaintiffs All American Semiconductor, Inc., Edge Electronics, Inc., Jaco Electronics, Inc. and Unisys Corporation against Infineon in this litigation. Plaintiffs shall file substitutions of counsel within thirty days.

**IT IS SO ORDERED**

Date: December 18, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge